# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EUGENE WOJTCZAK,**

        **Plaintiff,**

**v.**                                                                  **Case No. 06-C-987**

**CHASE BANK USA, N.A.,**

        **Defendant.**

## DECISION AND ORDER

This matter comes before the Court on Chase Bank USA, N.A.'s ("Chase") motion to dismiss Eugene Wojtczak's ("Wojtczak") complaint alleging a violation of the Fair Credit Reporting Act ("FCRA").[1] For the reasons that follow, Chase's motion is granted.

### BACKGROUND

According to the complaint, in May 2006, Wojtczak received a mailer from Chase stating that he was "pre-qualified" for a home loan of "up to $149,999" – subject to a "minimum loan of $15,000 (or $10,000 in MI)". The reverse side, under the heading "**IMPORTANT PROGRAM INFORMATION**," indicated that the offer was for a "30-year fixed rate fully amortizing first lien mortgage loan" secured by "your . . . owner

---

[1] Chase also filed a Rule 7.4 motion to supplement authority, which the Court will grant.

-1-

occupied primary residence." It also provides interest rates "rang[ing] from 8.40% (8.72% APR) to 13.58% (14.04% APR)" for loan amounts between $100,000 and $149,999." The mailer explained how such rates translate in terms of monthly payments: "A 30-year loan at 8.40% rate (8.72% APR) will require 360 monthly payment of $7.62 per $1,000 borrowed." Finally, the mailer describes additional charges, including a $395 underwriting fee and a $495 commitment fee for those in New Jersey.

## ANALYSIS

To survive a motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007). Because the mailer at issue was attached to the complaint as an exhibit, the Court may consider it as part of the pleadings. *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

Wojtczak alleges that Chase did not have a permissible purpose under the FCRA to access her credit report because the mailer did not contain a "firm offer of credit." He also avers that the violation was "willful," in which case he would be entitled to actual, statutory and punitive damages. *See* 15 U.S.C. § 1681(a).[2]

---

[2] Wojtczak's complaint is a putative class action, but he has not moved for class certification.

## I.      Firm Offer of Credit Under the FCRA

Under the FCRA, a lender may access and use credit information "in connection with any credit or insurance transaction that is not initiated by the consumer only if . . . the transaction consists of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B)(I). A "firm offer of credit" is defined as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer except that the offer may be further conditioned . . . ." 15 U.S.C. § 1681a(l). That is to say, a firm offer of credit "really means firm offer if you meet certain criteria." *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004) (internal quotes omitted), *cert. denied*, 543 U.S. 995 (2004).[3]

A firm offer of credit must also have "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 726 (7th Cir. 2004). The offer must have "sufficient value" because "an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information 'for catalogs and sales

---

[3] The "firm offer" may be conditioned on three specific requirements. First, the creditor may apply additional pre-selected criteria bearing on the consumer's creditworthiness. Second, the firm offer may be conditioned on verification that the consumer continues to meet the specific criteria used to select the consumer for the offer. Third, the offer may be conditioned on the consumer furnishing any collateral that was both established and disclosed to the consumer before selection of the consumer for the offer. *See* 15 U.S.C. § 1681a(l)(1-3).

-3-

pitches.'" *Id*. at 727 (quoting *Trans Union Corp. v. FTC*, 267 F.3d 1138, 1143 (D.C. Cir. 2001)).

To determine whether an offer of credit has sufficient value, *Cole* instructs courts to examine the following factors: (1) whether it appears likely that the offer would be honored; (2) whether the material terms of the offer are adequately disclosed; and (3) whether the amount of credit being offered is minimal or subject to so many limitations that it is of little value. *See Zawacki v. Gaol Financial, LLC*, 483 F.Supp.2d 653, 656 (N.D. Ill. 2007) (citing *Cole*, 389 F.3d at 727-28). These factors are considered together; no single factor is determinative. *See Zawacki*, 483 F.Supp.2d at 656 (citing *Cole*, 389 F.3d at 727-28, and *Perry v. First Nat'l Bank*, 459 F.3d 816, 824-25 (7th Cir. 2006)).

### 1. Likelihood that the offer would be honored

First, it appears likely that Chase's offer of credit to Wojtczak would have been honored. The mailer states that he is "pre-qualified" for a home loan, which is in contrast to the mailer in *Cole* that expressly stated that "[g]uaranteed approval is neither express nor implied" and therefore "created a question whether the offer of credit w[ould] be honored." *See Cole*, 389 F.3d at 728. Also, the offer in the instant case was conditioned upon Wojtczak's ability to furnish "acceptable property as collateral," and that is expressly allowed by the FCRA. *See* 15 U.S.C. § 1681a(l)(3).

### 2. Disclosure of material terms

Wojtczak argues that the mailer was a "sham offer" because it does not offer a maximum interest rate with respect to loans of less than $100,000. In addition, for loan amounts between $100,000 to $149,999, the mailer only includes a range of possible interest rates (8.40% to 13.58%).

Wojtczak's argument is unavailing. In the wake of *Cole,* numerous courts have held that the absence of some material terms does not automatically remove a loan solicitation from the statutory definition of a firm offer of credit. *See Forrest v. JP Morgan Chase Bank*, 2007 WL 2773518, at *3 (E.D. Wis. Sept. 21, 2007); *Murray v. HSBC Auto Finance, Inc.*, 2006 WL 2861954, at * 4 (N.D. Ill. Sept. 27, 2006) ("nothing in the test or legislative history of § 1681n requires [the defendant] to include the specific terms of the loan.") As the Seventh Circuit recently noted, the presence of a precise interest rate and other materials is just one of several factors to take into consideration. *See Perry*, 459 F.3d at 824-25.

Moreover, "[e]very consumer and every lender has a common understanding that home loans are made for a definite period of time, that banks charge interest for lending money, and that interest rates are subject to change." *Forrest*, 2007 WL 2773518, at *3 (quoting *Poehl v. Countrywide Home Loans, Inc.*, 464 F.Supp.2d 882, 884 (E.D. Mo. 2006)). The interest rate on a home equity loan depends on a variety of factors, including market conditions, credit history, and the value of the property used as collateral. *See Forrest*, 2007 WL 2773518, at *4. Wojtczak could have discovered the interest rates on those loans with

-5-

minimal effort by calling the toll free number provided in the mailer. *See id.*; *Poehl*, 464 F.Supp.2d at 884.

Furthermore, the mailer included many of the material terms that gave Wojtczak plenty of information regarding the terms of the proposed loan. The mailer explicitly states that Wojtczak is pre-qualified for any loan amount between $15,000 and $149,99, that it is a loan with a 30-year fixed rate, that loans between $100,000 and $149,999 will have an interest rate between 8.40% and 13.58%, and the mailer translated the rates in terms of monthly payments. The mailer also describes additional charges, like the $395 underwriting fee, the $495 commitment fee in New Jersey, and applicable closing costs.

Chase revealed a significant number of the material terms, and those that were not revealed, Wojtczak could have easily ascertained by calling the toll free telephone number provided. Accordingly, the second factor weighs in Chase's favor as well.

### 3. Amount of credit being offered

In *Cole*, the Seventh Circuit held that an offer of $300 in credit towards the purchase of a car did not have value, in part because "the relatively small amount of credit combined with the known limitations of the offer – that it must be used to purchase a vehicle – raises a question whether the offer has value to the consumer." *Cole*, 389 F.3d at 728. Here, the amount of credit offered by Chase – a minimum of $15,000 and a maximum of $149,999 – is easily distinguishable from the $300 in *Cole* as an amount in value. *See, e.g., Poehl*, 464

-6-

F.Supp.2d at 887 (offer for home loan of $93,500 "based on an office average of actual loans issued" is an "indication that the actual value will be more than a nominal amount.").

Further, an important consideration in *Cole* was that the credit offered could only be used towards the purchase of a car. This point was highlighted in *Perry*, which noted that a credit card offer with an extremely low credit limit ($250) could be used "to purchase any products or services for which Visa is accepted. This is in stark contrast to the credit offered in *Cole*, which could be used only toward the purchase of a vehicle at a particular car dealership. In *Cole*, the cost of purchasing a vehicle dwarfed the value of the credit offer." 459 F.3d at 825. Here, as in *Perry*, the credit extended by Chase could have been used to purchase anything, not just a car.

## II. Willful Violation

Wojtczak also avers that Chase's alleged violation is "willful," which, if true, opens the door to statutory damages. Recently, in *Safeco Ins. Co. of Am. v. Burr*, ---- U.S. ----, 127 S.Ct. 2201 (2007), the Supreme Court held that a defendant willfully violates the FCRA if the defendant acts in "reckless disregard" of the FCRA's obligations. *Id*. at 2209-10. Thus, a violation is not willful "unless the action is not only a violation under a reasonable reading of the statue's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 2215. There is no willful violation if the defendant's "reading of the statute, albeit erroneous, was not objectively unreasonable." *Id*.

-7-

As discussed above, the Court finds that Chase's reading of the statute is the correct one. However, even if the Court is wrong and Chase's mailer is not a "firm offer of credit" as defined by the FCRA, Chase's actions were not objectively unreasonable. The centerpiece of Wojtczak's argument is the lack of material terms in Chase's mailer, but as noted above, numerous courts hold that the FCRA imposes no such requirement. This precludes a finding of wilfulness in the instant case. *See Safeco*, 127 S.Ct. at 2215-16 ("While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text, and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor.").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Chase's Motion to Dismiss (Docket No. 13) is **GRANTED**.

Chase's Motion to Supplement Authority (Docket No. 19) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 27th day of November, 2007.

                        **BY THE COURT**

                        s/ Rudolph T. Randa
                        **Hon. Rudolph T. Randa**
                        **Chief Judge**